Tbe opinion of tbe Court was delivered by
Withebs, J.
In each of these cases, one of three persons, wbo subscribed in character of attesting witnesses to a will, was nominated as executor; in tbe former, the executor nominated never qualified, but renounced; in tbe latter case, tbe executor nominated did qualify, and has not renounced; in each case, tbe will was a mixed one, that is, it disposed of both real_and personal estate; each bas been denied probate, upon tbe ground, that one, nominated executor, was incompetent to attest tbe will that nominated him as such, and therefore, that each will was void, being subscribed by only two attesting witnesses to its execution, competent for that end in law, whereas at least three such are required to a will of any kind. Both these cases are parallel witb that of Taylor *516 and Taylor, 1 Rich. 531, in these particulars, to wit: that an executor bas subscribed as one of three attesting witnesses, to a mixed will; and that the question is presented upon the prolate of such will: and the only difference between them and the case of Cannon and Setzler, 6 Rich. 471, is this, that in the latter case, a legatee and not an executor, subscribed as one of the necessary number of attesting witnesses to the execution. The will in Taylor and Taylor was denied probate; that in Cannon and Setzler was admitted to probate. The difference between the present case and that of Workman vs. Dominick, 3 Strob. 589, is, that in the latter case, the will disposed of personalty alone. It was denied probate. The three cases mentioned, have been decided by the Court of Errors, and those, now to be adjudged, are before the same tribunal.
If, by virtue of one being nominated executor, in a mixed will, he takes such a beneficial interest, by or under the will, as is vacated and annulled by the statute 25 Geo. 2, c. 6 ; if, (in other words,) he stands upon the footing of a legatee, (so far as the action of that statute is concerned,) then the judgment, rendered in Taylor and Taylor, was erroneous, as is satisfactorily established by Cannon and Setzler ; for, on such assumption, the will, in the former, ought to have been admitted to probate, as was that in the latter case.
It is further to be observed, that Taylor and Taylor, proceeds upon the ground, that, though the statute of George may apply to a mixed will, yet it does not act upon a question of prolate in the Ordinary’s Court, because that proceeding affects only personalty, and is as a case in Doctor’s Commons. That doctrine is overthrown by Cannon and Setzler, for the question there was one of probate merely; and it is maintained and ruled, upon reasons satisfactory, that, whenever the statute of George annuls an interest, it does the work effectually, in all forums, and upon all occasions. So there is nothing left of the judgment in Taylor and Taylor, unless it *517 shall be held to rest on some distinction, in the case of a mixed will, between an executor and legatee, nominated in the same.
Until such modification of Taylor and Taylor we-had this (most unhappy) result, that the same instrument was a will for realty, and none for personaltythat, in fact, the statute of George, when invoked in the Court of Probate, was silent, in relation to the same paper, but spoke effectually and potently, when invoked in any other Court, touching a devise; (vide, Henderson vs. Kenner, 1 Rich. 531; Douglass vs. Brice, 4 Rich. Eq. 322.)
What disastrous confusion must be introduced by such a state of the law — into the scheme of testamentary dispositions —how completely, and in how many cases the influence of advancements upon the mind of a testator, in a mixed will, and the testamentary wishes, generally, would be thwarted— it needs no illustration to show. It is fortunate, therefore, that the Court had the opportunity, presented by the case of Cannon and Setzler,'to discover, that the statute of George, properly interpreted, would not work such consequences; for all will agree, that, in this State, at least, where distributees, those, standing toward -a decedent nearest in blood and domestic relation, aré in lieu of the heir of the common law, and are, some or all, legatees and devisees in most cases, it is far better, where the whole estate, real and personal, is disposed of by will, that the whole instrument, as to its execution, should be either valid, or void entirely.
In the uncertainty, if not the confusion and conflict of judicial opinion, which is disclosed by our cases, upon the question of wills, well or ill attested, it is fit that the cases now before us should have been brought to the Court of last resort, and that the occasion should be improved to fix some rules, that may serve as guides to Bench and Bar.
The argument and the judgments to be found in those cases warrant, as well established, the following propositions:
*518 1. That a person, subscribing in character of attesting witness to the execution of an instrument, intended to be a will, of any kind, is no witness at all to the execution, if he have, provided for him in the will, that beneficial interest, which would disqualify him to prove it as a will, were the instrument to go into operation instantly.
2. That the statute, 25 Greo. 2, c. 6, is of force in this State; that it applies to wills, devising real estate merely, and to mixed wills; that it operates to expunge, at the time of execution, every beneficial interest, specified by it and provided for in the will; and the person so undertaking to attest, who would otherwise be disqualified for the function of attestation, is placed, by that statute, above all exception.
3. That the said statute is as effectual on the question of probate, in the forum of that proceeding, as on any other question in any other forum.
The points now presented for determination are,
First, Does one, who subscribes an instrument intended to be a will or codicil, in character of attesting witness to the execution, wherein he is nominated executor, derive therefrom thereby such interest as disqualifies him to be a good attesting — that is to say, a credible, a competent — witness, to the execution thereof.
Second, If so, does the statute of G-eo. 2 operate, and declare him credible — competent—to discharge the function of attestation?
As to the first question:
We must bear in mind, that the legal capacity of any person to attest the execution of a will, is to be referred, as to *519 Ms status, for that function, to tbe moment of the execution and attestation. Further — that disqualification for that act does not arise from the rule of the common law, which excludes a witness for a direct, certain, positive interest, in the issue, or in the record as evidence, but from the bias, imputed to an expectancy, created by the will, that would be such an interest, if the instrument, executed as a will, should go instantly into operation. For reasoning, which has persuaded this court to adopt such doctrine, it is quite sufficient to refer only to the opinion of Pratt, C. J., (Lord Camden,) reported in 1 Day, 41, note, and transplanted into sundry of our cases, as Taylor and Taylor, Workman and Dominick, Oannon and Setzhr It would be overloading this 'opinion to reproduce such reasoning; but it may be considered as unanswerable to say, that we must recognize a broad distinction between that disqualification to testify, on a trial, arising from interest, as understood in the general law of evidence, and that disqualification arising from interest in a will, as applicable to one who assumes to attest its execution; because, otherwise, no such interest as that recognized by the general rule of evidence on the occasion of trials, can be created and vested in any one by an instrument to act in futuro, while it is ambulatory, liable to be revoked, and while the benefit may lapse or be repudiated; and in such latter view, credible or competent, would be made to refer to the time of giving testimony, and not, as the law most plainly and peremptorily requires, to the time of execution ; and it would lie in the power of one person to determine whether there should' be a case of testacy or intestacy. From this the conclusion follows, that, if the statute of George applies to the 'case of an executor, it will perform its office, irrespective of the fact of the executor renouncing or qualifying, receiving commissions or not.
It must be admitted, that, in England, the nomination as executor, and even the vesting in him a mere trust to sell, after he was bereft of a right to the residue, did not disqualify *520 him for the function, of attesting the execution of the will that nominated him; for he had no commissions, and his office, in such circumstances, was considered a burden rather than a benefit. Yet, it is worthy of remark, that in the very case (Hindson vs. Kersey, 1 Burr. 414, S. C. 1 Day, 41,) which called forth the well-known and influential opinion of Lord Camden, the witnesses (whose credibility he impeached, though they were sustained by the Court,) had a very indirect interest and one very remotely connected .with the will then in question. In Hatfield vs. Thorp, 5 Barn, and Ald. 589, three Judges of the King’s Bench thought that an indirect interest, (through the wife,) created by a will, did disqualify the husband to attest its execution, and that the statute of George did not help the case: contra, as to the operation of that statute is the case of Moore vs. Mc Williams, 8 Rich. Eq. 10.
But when he became entitled to commissions, one twentieth part of all moneys received and disbursed, (as he did under our Act of 1789, 5 Stat. 106,) it was considered by this Court that the executor had a beneficial interest under the will, whether he had qualified or not; Taylor vs. Taylor and Workman vs. Dominick show this. That position, however, is assailed, upon the present occasion, by those who advocate the probate of these wills, in order to show that the executor, having no disqualifying interest to attest, is good for that purpose under our statutes relating to the execution of Wills, and therefore, that in such case the second question above stated need not be encountered since the saving efficacy of the Statute of George is not required. And if the position be sound the consequence follows, though it is in conflict with Workman vs. Dominick. But the majority of this Court has resolved, that there is good ground to say an executor nominated in a will does take, by and under it, such beneficial interest (as that phrase has been already interpreted,) as disqualifies him to become a credible — competent—witness to its execution.
It has been already shown, that contingency, as to the *521 actual fruition in future of any benefit that may accrue from Ms nomination, does not afford the true test; for the same applies to all nominated beneficiaries. They are all clothed by the will with a capacity to take and enjoy, eo instanti, provided the 'immediate dissolution of the testator should call the will into effectual operation. ( Vide, what is said by Lord Camden, 1 Day, 56, note.) And consider the case of an alien wife, a devisee, who under the recent state of our statute law, might take and hold as such until office found; she might at any time have been ousted by proceedings in escheat on the part of the State. In such circumstances could she be held a disinterested, credible and competent witness to a will, which provided a devise for her, as for example, Mrs. Bull, a party in one of these cases ? .
It is said, however, that the executor does not take his commissions by virtue of the will and that his mere office does not disqualify. No more did he take in England, at one time, the residue, (itself also very contingent,) by virtue of any provision in the will to that effect, although that indubitably would disqualify him to attest its execution • Betteson vs. Bromly, 12 East, 250; but it was given to him by law, as commissions are here; both attend upon his office. And the like was true as to a debtor to the testator, nominated executor. Indeed no substantial difference is perceived between the case of an executor as it now exists, and a case where a legacy of value, equivalent to commissions and in lieu of them, should be given, as compensation for care, trouble, responsibilty, and expense, in the performance of administrative duty. In some cases, the commissions prove to be very inadequate compensation, in others very ample; and the office may prove, in other respects, a very advantageous position. The executor may recover, under our law, remuneration for extra services — may purchase, at his own sale, property with which he is more familiar than any one else: sometimes he receives more than any legatee or devisee *522 bis compensation is certain, and tbe same whether creditors be satisfied or not; and, though he receives because and when he earns, and complies with legal regulations, yet it is no trifling matter, often to have secured the opportunity to earn by the management of estates, well illustrated by a not unfrequent alacrity and competition among several to gain authority from the Ordinary to make such earnings. That he is vested, by law, with the legal estate in personalty, and choses in action, that, in some sense, he stands in lieu and stead of the testator, are considerations not to be ignored. The reason so often applied to his case in Eúgland, that his office imposed a burden, and did not confer a benefit, does not well apply here to the creation of the Act of 1789. We conclude, therefore, that he is such a person, in this State, as does not come under the description of a credible witness to a will of any kind. So much of the argument in Taylor and Taylor, and Workman and Dominick as goes to maintain this position, is considered well founded.
As to the second point; does the statute 25 Greo. 2, ch. 6, apply to the case of an executor attesting the execution of a will ?
Considering the first point established, that the case of the executor is the same, in its nature, as that of a legatee or devisee, Cannon and Setzler is full authority to maintain the affirmative. Having placed the executor upon such footing —having shown that renunciation or qualification, as such, will make no distinction, we have before us now two cases perfectly parallel with Cannon and Setzler.
There is a third question, which, we think ought to be adjudged upon this occasion, and a majority of the court concur upon that also. It is whether the statute 25 Geo. 2, ch. 6, applies to wills of personalty merely, as well as to those mixed, and those containing devises exclusively?
Workman and Dominick is directly in the negative, and followed the judgment rendered in Taylor and Taylor, as *523 authority. That judgment was severely shaken by Gannon and Setzler; no foundation, indeed, was left for it, but such distinction as might exist between the case of executor and legatee. As we have, in this opinion, undertaken to show there is no distinction between them, there seems to be no hazard in saying that, if the case of Taylor and Taybr were now before us, the decision would be the reverse of what it was. We apprehend that the decision in Taybr and Taybr may be considered as the progenitor of that in Worlcman and Dominick, and we feel at liberty, therefore to review the latter.
The words of the first section of 25 Gfeo. 2, c. 6, are: “ If any person shall attest the execution of any will or codicil,” (after a day named,) “ to whom any beneficial devise, legacy, estate, interest, gift, or appointment of, or affecting any réal or personal estate, (other than and except charges on lands, tenements, and hereditaments, for payment of any debt or debts,) shall be thereby given or made, such devise, legacy, estate, interest, gift, or appointment shall, (so far only as concerns such person attesting the execution of such will or codicil, or any person claiming under him,) be utterly null and void; and such person shall be admitted as a witness to the execution of such will or codicil, within the intent of the said Act,” (meaning the 5th section of the Statute for the prevention of Frauds and Perjuries,) “notwithstanding such devise, legacy, estate, interest, gift, or appointment.” 2 Stat. 580.
It is not to be successfully contested, that the occasion, the . practical, existing evils, that gave rise to this statute in England, such as were then known and felt, and which alone it did, in fact, remedy there, all pertained to testamentary dispositions of lands, tenements and hereditaments, and interests in them, devisable by the statute of wills, by custom, or an estate pour autre vie, rendered devisable by the 12th section of the Statute of Frauds and Perjuries.
*524 It is equally incontestable, that the words “ any will or codicil,” are quite capable to embrace every testamentary disposition, of whatsoever description of property.
No such condition of statutory regulation as to the execution of a will, disposing of personalty only, such as our Act of 1824 created here, ever did exist in England; for no attestation of a will of personalty merely ever was required there until the statute 1 Victoria, ch. 26 ; sec. 17 of which is as follows: “No person shall, on account of his being an executor of a will, be incompetent to be admitted a witness to prove the execution of such will, or a witness to prove the validity or invalidity thereof.” It will be observed that this is quite a different sort of -remedy from that within the purview of the statute Geo. 2d — for that applied to the attestation and not the proof of the execution of a will, and the confounding of the two ideas obliterates the grand distinction, so well drawn by Lord Camden, between a witness to attest and one to prove. So this section does not prove that the Parliament, on the Sd July, 1887, extended the remedy of the statute Geo. 2d, to wills of personalty only, and that its remedy would not have been applied by the Courts to the same evils, had they existed in that class of wills, as did exist in those contemplated by the Statute of Frauds and Perjuries.
The said statute of Victoria is a new code as to the execution of testamentary dispositions, and repeals the 25 Geo. 2, ch. 6, and it drops the word credible. It is not, therefore, a declaratory law as to what was or was not the scope of the statute of Geo. 2d.
Hence we say that the Courts of England never had before them, in the light that the Act of 1824 presents to us, the question of the extent to which the remedy of the statute of Geo. 2d could and should be carried, in order to cure a mischief of the very same kind that gave occasion for its enactment (¿ e. in regard to the subject matter of testamentary disposition) though its extension should embrace an evil of a *525 different variety. And yet, in 1811, Sir Wm, Grant, (vide Lees vs. Summersgill, 17 Ves. 508) certainly no mean professional authority, adjudged that the statute of George did extend to a testament merely. Tbe judgment stood unim-peached, so far as appears, until 1826, at which time it was maintained at bar, by such men as Sugden and Phillimore, though unsuccessfully, before Sir John Nicholl, who, in Brett and Brett, disaffirmed it. It was again maintained and dis-affirmed in 1827 (Emanuel vs. Constable,) and a third time in 1829, (Foster vs. Banbury); which shows that, even as the matter presented itself in England, there was a persevering support of the case of Lees vs. Summersgill for the period of eighteen .years. Meantime, between 1811 and 1826, while the doctrine of Lees vs. Summersgill stood unimpeached, our Act of 1824 intervened. We had all the English statute law on the subject of the execution of wills, that of Charles 2, George 2, and our own Act of 1789.
In 1824 it was enacted,
“ That all wills and testaments of personal property shall be executed in writing, and signed, by the testator, or by some other person, in his presence, and by his express direction ; and shall be attested and subscribed, in his presence, by three or more credible witnesses, or else be utterly null ahd of no effect.”
And further,
“No revocation of any will or testament of personal property shall prevail as such which would not be effectual in law as a revocation of a will of REAL estate.”
Now we must presume necessarily, that the law-givers are acquainted, at all times, with the state of the law upon which they act. Therefore, in 1789, when the 5th section, as well as others, of the Statute of Frauds and Perjuries, pertaining to the execution of wills, was re-enacted, in substance, they knew that the three credible witnesses, required for the attestation of a will, were such as were competent to that purpose, *526 in the sense of the Statute of Frauds, and such as were made competent by the action of the statute of Greorge 2d; for both existed here at that time, together with a knowledge of . the local interpretation of them in England, which generally ,is adopted as authority in other courts, upon a familiar legal principle in the construction of statutes. Among the cases exhibiting such local interpretation of those statutes was Lees vs. Summersgill. When, therefore, in 1824, our Legislature required the same three credible witnesses to attest the execution of a will or testament of personal property, and when especially, they placed a revocation of it, in all respects, and in so many words, upon the footing of a revocation of a will of “ real estate,” it may be confidently demanded, where is the violence done to the sanctity of the legislative domain, the dictates of sound reasoning, the rules of legitimate interpretation, the examples of all Courts under the reign, of the common law, in construing statutes upon the doctrine of pari materia, when we hold, in relation to a series of statutes, upon the same subject, to wit: the execution and revocation of wills and codicils, that the remedy suitable to cure the only practical mischiefs that attended one class, when the remedy was provided, should apply to the same mischiefs that have been made to attend the other class, by reason of the identity of form enforced upon both classes? When the words, “ credible witnesses,” were used, in 1824, why exclude such definition of them as the statute of Charles 2 had derived from that- of Greorge 2, and such as had been adopted by our Act of 1789 ? Nobody will deny, that the design of the statute Greorge 2, was to save wills required to be attested by three credible witnesses, by sacrificing the several kinds of beneficial interest specified, and provided therein for an attesting witness. Wills of personalty, since that kind of property has attained its proper dignity, are as deserving of such favor, and have been placed in the same category, as to the mischief that beset them, the danger, the evil, as those of *527 realty — and, since tbe enacting words of the statutory remedy are broad enough to embrace them, why deny them the benefit of its protection ? It is, at last, but vacating the interest, which a particular person may be found to have in an instrument which he assumes to attest, ut res magis valeat quam per eat; and that is the substantial intent, the remedial scope of the statute of George 2.
A few instances, hastily collected, of such doctrine, in the construction of a single statute, or of a series of statutes, as we favor, not more germaine to the same subject matter, than those under consideration, will be subjoined.
Although the preamble is generally the key to the construction of a statute, yet it does not always open all the parts of it; as sometimes the legislature, having a particular mischief in view, which was the primary object of the statute, merely state that in the preamble, and then go on, in the body of the Act, to provide a remedy for general mischiefs of the same nature, but of different species, neither expressed in the preamble, nor, perhaps, then, in immediate contemplation. Mann vs. Cammel, Loft, 783.
Strong words, in the enacting part of a statute, may extend it beyond the preamble: Pattison vs. Bankes, Cowp. 543. But a preamble cannot control the enacting part of a statute, which is expressed in clear and unambiguous terms: Crespigny vs. Willenoon, 4 T. R. 793, per Buller, J.
A statute lately made, may be holden to be within the equity of a statute long since made, and there are, in our books, frequent instances of its having been so holden: Bacon Ab. Statute, J. 3; and see Vernon's case, 4 Coke, 4.
In Sir William Moore's case, (Ld. Raymond, 1028,) Holt is reported to have said — “ For though a subsequent statute may be comprehended within the meaning of an Act precedent, as the Stat. 32 H. 8. of Wills, within the Stat. 27 H. 8. of Jointures, yet that is, when the latter statute is within the same reason as the former, which this is not.”
*528 “ Several Acts,” (says Ch. Kent, Com. 463, 7 ed.) “ in pari materia, and relating to the same subject, are to be taken together and compared, in the construction of them, because they are considered as having one object in view and as acting upon one system.” “The object of the rule is to ascertain and carry into effect the intention; and it is to be inferred, that a code of statutes, relating to one subject, was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions.”
Though what we call our Insolvent Debtors’ Act was designed to give the relief of a sort of bankrupt system, and the Prison Bounds’ Act to mitigate the rigors of actual incarceration, and though Judge Brevard (vide note 2, Dig. 157) thought it extremely difficult to construe the two in pari materia, and cites some earlier cases to show it, yet for a long-space of time they have been so construed and administered. Anri if it be said that the Act of 1788, refers internally to that of 1759, the reply is, so does that of 1824, refer to and adopt, in words, as to the mode of revoking a will of personalty merely, that of 1789, upon the same subject as to a will of realty.
Behold the consequence of resolving that the statute o^ George shall not apply to the execution of a testament. The execution of a will of real estate, and a revocation of it,, is good, though attested by one who is made competent only by virtue of that statute. By the Act of 1824, “No revocation of a will or testament of personal property shall prevail as such which would not be effectual in law as a revocation of a will of real estate.” They are, beyond cavil, to be put on the same footing, as to revocation. Consequently, the execution, in writing, of a revocation of a testament of personal property, which should be attested by a legatee under the provisions of such testament of revocation would be good, for it would be “ effectual in law,” as such, if it related to a will of real estate, by the force of the statute of George 2d. The result would *529 be, that the same man, in the same circumstances, would be a credible attesting witness to the execution of a revocation, who would not be such to the execution of the testament itself. Can it be believed, for a moment, that such incongruity ought to be imputed to our legislation ; or be said, upon good foundation, that the judicial construction, which avoids such palpable inconsistency, should be denounced as usurpation of legislative power ? Truly, indeed, this might be said, (as it has been in Cannon and Setzler, 6 Rich. 484,) if this Court were to attempt, by construction, to save an attesting legatee from the loss of both legacy and distributive share, which has been done in New York and Illinois, (vide 4 Kent Com., 7 ed. p. 565, note d.) by legislative provision. It is this evil which has been admitted to be beyond judicial power, and not the construction of our Acts in pari materia. Without further argument or citation of authority, we announce our conclusion, that the statute 25 George 2, ch. 6, applies equally to wills of personalty and of realty.
Inasmuch as the precise point, whether the office of the executor, as well as his commissions, are taken away by the said statute, is not now necessarily presented by these cases, and since the same has not been discussed as a primary inquiry, the matter is not ruled; but it may be said, that, guided by present light upon that subject, the impression of several members of the Court of Errors, is in the affirmative.
A point to this purport was discussed, to wit, that the will of John B. Bull contained no devise, in legal contemplation, because the devise, in terms, seeks to transmit to an alien widow of testator, who cannot take because of alienage, and besides, the will provides that the real estate shall be con. verted into personalty and remain such. There is no difference of opinion among us, that an alien widow may be de-visee to take and to hold until office found, and that the State may forbear to take measures to oust; and if there be no more than a devise to trustees to sell, and the proceeds are *530 declared, or by consequence become, personalty, we all agree there is yet a devise, and the will cannot act to produce a conversion until it bas been duly established as a will of real estate. And this conclusion is not shaken by anything said to be derived from Wilkins and Taylor, and Mathis and Guffin, adjudged in the Court of Equity. If there be anything to the contrary, in these cases, it finds no support in this Court.
The case of W. P. Noble vs. Andrew P. Burnett, must go back to the Circuit Court, upon the ground of error in excluding Edmund C. Martin, for incompetency to attest the execution of the will in question; and the other case must go back to the Court of Probate, upon the same ground of error, and that Court be left to inquire and determine whether the incompetence of Dawson to testify in the cause■ can be supplied by secondary evidence; and it is so ordered and adjudged.
Johnstoh, DargAN and Wardlaw, CO., and Wardlaw, WhitNER, and MüNRO, JJ., concurred.